**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**JEFFERY CHARLES ELMORE,**                                                **PLAINTIFF**
**ADC # 91418**

**V.**                **CASE NO. 1:15-CV-111-JM-BD**

**CORRECT CARE SOLUTIONS, et al.**                              **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**      **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge James M. Moody Jr. Any party may file written objections to this Recommendation. All objections must be specific and must include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive any right to appeal questions of fact.

**II.**      **Discussion:**

         A.      Background

Plaintiff Jeffery Charles Elmore, an Arkansas Department of Correction ("ADC") inmate, filed this civil rights lawsuit claiming that Defendants were deliberately indifferent to his serious medical needs. (Docket entries #1 and #2) Defendants Marty

Hearyman and Elizabeth Haydon[1] ("Defendants") have now moved for summary judgment[2] (#81) and Mr. Elmore has responded (#85). For the reasons set forth below, the Defendants' motion for summary judgment (#81) should be GRANTED.

B.   Standard

Summary judgment is granted to a party when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

C.   Undisputed Facts

Mr. Elmore complains about the medical treatment he received while incarcerated in the ADC. (#2) According to Mr. Elmore, he has trouble sleeping because he suffers chest pain when he lies on his back or left side. In addition to back pain, he suffers from abdominal pain and polyps or some type of growth in his nasal cavity, which cause breathing problems. (#2)

Based on his exhausted grievances, Mr. Elmore's claims against Defendant Hearyman in this lawsuit are limited to treatment for stomach complaints from June 25, 2015 until September 15, 2015. Claims against Defendant Haydon are limited to the

---

[1] The Clerk of the Court is directed to update the docket sheet to reflect the correct identity of Defendant "Elisabeth Hayden" as Defendant "Elizabeth Haydon."

[2] All other Defendants have been dismissed. (#48, #74)

period between June 30, 2015 and September 15, 2015, regarding his medical treatment. (#74)

On April 28, 2015, Mr. Elmore saw nurse Rhoder for complaints of stomach pain. (#83, Ex A & B)  Nurse Rhoder scheduled Mr. Elmore for an appointment with Defendant Hearyman on May 7, 2015.  (*Id*.)  On that date, Defendant Hearyman examined Mr. Elmore and diagnosed indigestion and Gastroesophageal Reflux Disease ("GERD") with a history of gastric ulcer and positive H pylori (a bacteria usually found in the stomach that can cause peptic ulcers).  (*Id*.)  Defendant Hearyman prescribed a triple-therapy treatment of antibiotics to eradicate the H pylori bacteria, and he renewed Mr. Elmore's prescription for a wedge pillow to reduce night-time reflux caused by GERD.[3]

On June 2, 2015, Mr. Elmore had a follow up appointment with nurse Rhoder. Because his stomach pain had not improved, Nurse Rhoder requested an esophagogastroduodenoscopy (EGD) to examine the lining of his esophagus, stomach, and duodenum.  (*Id*.)  Dr. Breving performed the endoscopy on July 2, 2015.  The findings revealed no abnormalities in the stomach or duodenum; the lower third of the esophagus showed some evidence of reflux without bleeding.  (*Id*.)  Dr. Breving diagnosed mild distal esophagitis and recommended continued proton-pump inhibitor therapy.  (*Id*.)

---

[3] Mr. Elmore was already on omeprazole, a proton-pump inhibitor used to treat indigestion and GERD.  (*Id*.)

On July 10, 2015, Mr. Elmore wrote an emergency grievance complaining that he had not been informed of the results of the scope.[4] (#58, Ex. A, NC-15-00639)

On July 14, 2015, Mr. Elmore filed a grievance complaining that he had contacted Defendant Haydon, the Health Services Administrator ("HSA"), on two occasions concerning his ongoing health problems but had failed to receive adequate medical treatment. (#58, Ex. A, NC-15-00663)

Mr. Elmore testified that he was not certain when he first talked to Defendant Haydon, but stated that he saw her in the infirmary at various times. (#83, Ex. C, p. 4 & 9) According to Mr. Elmore, he wanted Defendant Haydon to tell Defendant Hearyman to take better care of him and to find out why he was having chest pains. (#83, Ex. C, p. 6-7) Mr. Elmore testified that he talked to Defendant Haydon twice about this, and each time she agree to look into his treatment plan. According to Mr. Elmore, she never got back to him, so he filed the grievance. (#83, Ex. C, p. 6-9) Mr. Elmore admits that he was receiving medical testing and treatment during this time, including an EGD and biopsy, to find out why he was experiencing pain. (#83, Ex. C, p.11-12)

Sometime in August of 2015, Defendant Hearyman contacted Mr. Elmore and explained that the results of the biopsy were negative. (#83, Ex. C, p. 16) On August 4,

---

[4]The health service response then stated that Defendant Hearyman had reviewed the results of the scope and Mr. Elmore had a scheduled appointment with Defendant Hearyman to review the results. Mr. Elmore appealed stating that it had been twenty-nine days since his stomach scope and he still had not had a follow-up appointment. On September 15, 2015, the Deputy Director, Rory Griffin ("Director") found the appeal to be without merit.

2015, Defendant Hearyman saw Mr. Elmore for complaints of constipation and prescribed Miralax. (#83, Ex A & B) Defendant Hearyman did not see Mr. Elmore again during the relevant time period for stomach complaints. (#83, Ex. A)

On August 18, 2015, Mr. Elmore saw Nurse Rhoder complaining of worsening chest pains over the last year. Nurse Rhoder scheduled Mr. Elmore for an x-ray on August 24, 2015 and scheduled an appointment with Defendant Hearyman for the next day. (*Id*.) On August 25, 2015, Defendant Hearyman examined Mr. Elmore, reviewed the x-ray results, concluded there was no active cardiopulmonary pathology, ran an EKG which revealed a normal sinus rhythm, decided to look into additional evaluation options available, and informed Mr. Elmore of this plan. (*Id*.)

According to Defendant Hearyman's affidavit, after numerous labs and diagnostic studies, the medical staff diagnosed Mr. Elmore with inflammation caused by GERD and properly treated him for symptoms associated with that diagnosis. (#83, Ex. B, p.5)

D.   Analysis

Determining whether an official was deliberately indifferent to an inmate's medical needs involves both objective and subjective analyses. *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014). To prevail, Mr. Elmore first must establish that he suffered from an objectively serious medical need. *Id*. at 340. Because Defendants do not argue that Mr. Elmore suffered from a serious medical need, the Court will turn to the subjective component of the deliberate-indifference standard.

For Defendants to be liable, Mr. Elmore must show that they "actually knew of but deliberately disregarded [his] serious medical need." *Id*. This showing requires a mental state "akin to criminal recklessness." *Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Mr. Elmore must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). He must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997).

Mr. Elmore complains that Defendant Haydon did not ensure that Mr. Elmore received adequate medical care. The facts, however, are at odds with Mr. Elmore's assertion. It is undisputed that medical personnel regularly saw Mr. Elmore during the relevant time. They ran tests and prescribed medications in an attempt to identify and alleviate Mr. Elmore's ailments. Defendant Hearyman regularly saw Mr. Elmore and ran various tests.

In fact, Mr. Elmore testified he did not disagree with the medical treatment that Defendant Hearyman provided, but rather, objected to the manner Defendant Hearyman communicated with him. (#83, Ex. C at 15-16) For example, he complains that Defendant Hearyman did not give him his EKG results in a timely manner. It is undisputed that Defendant Hearyman reported the results to Mr. Elmore sometime during the month after the EKG was run. As a matter of law, Dr. Hearyman cannot be held

6

liable for failure to provide adequate medical care based on this brief delay in telling Mr. Elmore the results of his EKG.

Mr. Elmore may continue to have pain, but that does not mean that Defendants were deliberately indifferent to his complaints. Mr. Elmore received regular care throughout the relevant time period, including tests, x-rays, doctor examinations, medications, and a prescription pillow. Because Mr. Elmore received proper medical care, neither Defendant Haydon nor Defendant Hearyman is liable for a constitutional violation. The facts simply do not demonstrate that during the relevant time period Defendants were in any way deliberately indifferent to Mr. Elmore's medical needs.

## III. Conclusion:

Defendants' motion for summary judgment (#81) should be GRANTED and the case DISMISSED.

DATED this 8th day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE